# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

SOCORRO MAYA, # R33278,  )
                          )
       Plaintiff,  )
                          )
vs.                       )      Case No. 17−cv−0546−NJR
                          )
ILLINOIS DEPARTMENT OF    )
CORRECTIONS,              )
WEXFORD HEALTH SOURCES, INC.,  )
LOUIS SHICKER,            )
JOHN BALDWIN,             )
KIMBERLY BUTLER,          )
J. LASHBROOK,             )
J. TROST,                 )
GARCIA,                   )
RITZ,                     )
EINWOHNER,                )
CHRISTOPHER MATHIS,       )
KELLY PIERCE, and         )
UNKNOWN PARTY,            )
                          )
       Defendants.  )

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Socorro Maya, an inmate of the Illinois Department of Corrections ("IDOC") currently house in Menard Correctional Center ("Menard"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In his Complaint, Plaintiff claims the defendants have been deliberately indifferent to his serious medical issues, subjected him to unconstitutional conditions of confinement, and violated his First Amendment right to access the courts. (Doc. 1). This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

1

(a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–

(1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to allow this case to proceed past the threshold stage.

<u>The Complaint</u>

In his Complaint (Doc. 1), Plaintiff makes the following allegations related to his medical needs, the conditions of confinement at Menard, and the issues he has faced exercising his right to access the courts.

*A.  Medical Needs*

Plaintiff has been diagnosed as having a hernia. (Doc. 1, p. 5). Plaintiff has complained

about his hernia, in that it continues to get bigger, causes him extreme pain, and restricts his ability to move around and exercise. *Id.* Plaintiff has been told by the Health Care Unit ("HCU"), staffed and run by Wexford Health Sources Inc. ("Wexford"), that per Wexford policy they cannot prescribe him anything stronger for the pain than ibuprofen, Motrin, or generic Tylenol. *Id.* This policy is in place "no matter what the injury or serious medical need is that has an inmate suffering in pain." *Id.* Under this policy, inmates are automatically put on the least effective pain medication to save money for Wexford. *Id.*

Plaintiff informed Dr. Trost, the Medical Director of Menard, that he was in a "whole lot of pain from his hernia," but Trost refused to give Plaintiff anything stronger for his pain, causing him to suffer unnecessarily. (Doc. 1, p. 6). Trost also told Plaintiff that per IDOC and Wexford policy, he would have to suffer with the hernia until it became strangulated. *Id.* Waiting this long could kill Plaintiff. *Id.* IDOC Medical Director Louis Shicker and Wexford have created a policy that "lists a set of criteria that inmates with hernias have to fit before they are given hernia surgery, regardless of how much pain the inmate is in or how big the hernia becomes, unless it becomes strangulated." *Id.*

Plaintiff's hernia has increased in size over the past couple of years, and Wexford, Trost, and Shicker have denied Plaintiff relief from his suffering and related pain. *Id.* Shicker, Trost, and Wexford "all know that a hernia is a serious medical condition that if left untreated has the potential to kill Plaintiff, and still they have ignored his constant complaints of being in pain and unable to work out" and that his hernia "causes his back and stomach to hurt and this pain causes Plaintiff's blood pressure to rise and become high," a malady which "is nicknamed the silent killer." (Doc. 1, pp. 6-7). "The course of treatment that Wexford and Dr. Trost [have] been prescribing to Plaintiff for his hernia has not worked to fix his hernia nor to stop his pain. It's

been the same non-treatment treatment for a few years and it hasn't worked. Plaintiff's condition has gotten worse." (Doc. 1, p. 7).

Trost submitted Plaintiff for a recommendation for surgery, and per Wexford policy, his surgery recommendation was reviewed by Dr. Ritz and Dr. Garcia, "who had not examined Plaintiff, seen Plaintiff, or spoken with Plaintiff" but "made a diagnoses that Plaintiff did not need surgery." *Id.* These individuals "are the Wexford hired collegial review doctors that give second opinion diagnoses that benefit Wexford, to save money by deliberately not sending Plaintiff out for a surgery or to be seen by a specialist to determine if he would need surgery or not." (Doc. 1, pp. 7-8). Garcia, Ritz, and Wexford refused to grant Plaintiff a surgery to correct his hernia, knowing that if he does not have surgery, he will continue to suffer in extreme pain. (Doc. 1, p. 8). IDOC, Baldwin, Butler, and Lashbrook have turned a blind eye to Wexford's failure to provide Plaintiff and other similarly situated inmates with adequate medical care for their serious medical needs, causing them to suffer in pain unnecessarily. (Doc. 1, pp. 8-9).

When Plaintiff was brought into IDOC in 2004, he was given a physical examination. (Doc. 1, p. 10). During his examination, he informed John Doe 1, the "Wexford Doctor at NRC that saw him," and Jane Doe 1, the Nurse from NRC that saw him along with the doctor, that his mother had passed away from complications associated with diabetes. *Id.* From this interaction, Plaintiff was diagnosed with diabetes and placed on medication for it without being given the proper testing. *Id.* Wexford has a policy to save money, and "in that policy they don't want to send inmates like Plaintiff out to be examined by a specialist or send him to get the proper testing that he needs, to adequately assess what is actually wrong with him medically." *Id.*

Wexford, John Doe 1, and Jane Doe 1 "know how dangerous it is for a medical personnel to make a diagnosis or prescribe a course of treatment for a patient without getting an adequate

medical history assessment and getting the proper testing to confirm the diagnoses that [are] made," particularly because "misdiagnoses are the cause of thousands of deaths a year." *Id.* Wexford is training its staff to look at cost saving treatments first, and in this training, the medical staff are encouraged to make assessments of patients without the proper testing being done. (Doc. 1, p. 11). Wexford puts business before providing adequate medical care, which it knows "will cause inmates such as Plaintiff to be denied access to much needed medical care and to be subjected to unnecessary pain and suffering." *Id.*

From 2004 until 2016, Plaintiff was diagnosed as diabetic and treated for diabetes with prescriptions prescribed by Trost and other Wexford doctors. *Id.* In 2016, Plaintiff was informed at one of his diabetic clinics that he could not be diabetic and that he should speak with Trost about getting tested for diabetes again. *Id.* Plaintiff asked Trost to be tested for diabetes on several occasions, explaining that he was told that he could not be diabetic and that he should be tested again, but Trost told him that he had diabetes without re-testing him or ordering a test by a specialist despite the fact that Plaintiff's diagnosis had been called into doubt. (Doc. 1, pp. 11-12). Had Plaintiff been given the appropriate testing, Plaintiff would have been discovered to be without diabetes. *Id.* Plaintiff's requests for a diabetes test were ignored by Trost, Shicker, Wexford, Butler, and Baldwin. (Doc. 1, p. 13).

A short time after Plaintiff began complaining and requesting to be tested for diabetes after being told that he did not have it, Plaintiff was taken off the medications that he had been prescribed by Trost for diabetes. (Doc. 1, pp. 14-15). Plaintiff did not get ill after he was taken off of the medication, though he would have were he diabetic. (Doc. 1, p. 15). It became clear to Plaintiff that he was treated with medications that he did not need for 12 years. *Id.* Around this time, Plaintiff began experiencing issues with his kidneys. *Id.* Trost recommended that Plaintiff

be sent to a urologist, but Garcia overruled that recommendation, and Trost agreed with Garcia's position and ordered a renal ultrasound on Plaintiff's kidneys instead. *Id.* Plaintiff had a renal ultrasound, and the results showed severe damage to Plaintiff's kidneys. *Id.* "Plaintiff was told by one of the nurses that his kidneys were damaged as a result of being on medication for diabetes when he did not have diabetes." (Doc. 1, pp. 15-16). Plaintiff was told by two Physician's Assistants and two nurses that his kidneys were "messed up as a direct result of being prescribed diabetic medications and not having diabetes." (Doc. 1, p. 16). Plaintiff asked Trost whether this was true, and Trost told him that it was a possibility but to not fret over it. *Id.*

Plaintiff was recommended for a consult by a nephrologist, but per the Wexford policy designed to examine cost first, Plaintiff's recommendation was sent for collegial review and denied by Ritz and Wexford. (Doc. 1, pp. 16-17). Plaintiff was seen on the video monitor by Dr. Einwohner, a Wexford corporate doctor, about his kidneys being damaged. (Doc. 1, p. 17). When asked whether she thought Plaintiff had diabetes, Einwohner responded that she did not think that he ever did. *Id.* Though Plaintiff was not taking medications for diabetes, the medical staff, including Trost, Jane Doe 2, Garcia, Ritz, Einwohner, and Wexford kept him listed as a diabetic in his records. (Doc. 1, pp. 17-18). Such a mistake poses a danger to Plaintiff. *Id.*

Though Plaintiff has informed Trost, Shicker, Butler, Baldwin, and Jane Doe 2 that he no longer takes the medicine for diabetes, he is still listed as diabetic and is scheduled for the diabetic clinics every few months, during which he gets his blood and urine checked and is tested as a diabetic. (Doc. 1, p. 18). At one point, Plaintiff was given an accu-check, which is a test for people with diabetes to gauge how much insulin they need to take. *Id.* His sugar levels were low, and Plaintiff had to stop the nurse from giving him an insulin shot by telling her that he was not, in fact, diabetic. *Id.* That mistake was made over six times, despite Plaintiff asking the nurse to

take him off of the diabetic list. *Id.* This mistake also occurred at an outside hospital Plaintiff was at for a procedure on his kidneys, and had he received the dose of insulin that he was nearly given, he could have died or gone into a coma. (Doc. 1, p. 18-19). The reason Wexford, Trost, Garcia, Ritz, Einwohner, and Jane Doe 2 have allowed the misdiagnosis to remain on Plaintiff's medical files is "because it would show that for 12 years they misdiagnosed him" and "gave him medication for the misdiagnoses for 12 years" and that the "misdiagnoses and the medications he was prescribed messed up his kidneys." *Id.* Neither Einwohner nor Trost would tell Plaintiff what the side effects were of the medications that he was prescribed for diabetes. (Doc. 1, p. 20). This information was "withheld from Plaintiff to deliberately keep him in the dark about how serious his medical condition was, and this omission of facts denied Plaintiff the ability to make a thought out [knowing] decision of if he wanted to [accept] the prescribed course of treatment that was being offered." (Doc. 1, p. 21).

IDOC and Shicker "have known since at least 2010 that the Wexford Health Sources Inc. health care providers of IDOC inmates (Plaintiff included) have understaffed every IDOC facility that they've been hired to provide medical care at and this prevents adequate medical care from being able to be provided to the inmates being held in their custody (IDOC)," including Plaintiff. (Doc. 1, p. 22). IDOC and Shicker were both made aware of this, at the very least, by a class action lawsuit *Lippert v. Wexford*, which is still pending and for which Shicker is a defendant. (Doc. 1, p. 22). Baldwin, Butler, and Lashbrook are also aware of the overcrowding issues in the IDOC prison system, which prevents Wexford from providing adequate medical care to Plaintiff and similarly situated inmates. *Id.*

Plaintiff sent letters to Shicker, Baldwin, and Butler, informing them of his situation and how he "was being deliberately denied medical care for his serious medical needs," and "he

asked if they would monitor his situation to ensure that he is being treated fairly and adequately being provided medical care." (Doc. 1, p. 23). These defendants "deliberately ignored Plaintiff and never wrote him back or responded to his letters not monitored his situation." *Id.* Plaintiff also wrote emergency grievances, which he sent to Butler and Lashbrook, notifying them that he was being deliberately denied medical care for his hernia, and neither defendant responded. These defendants also did not respond to letters Plaintiff sent them inquiring about the grievances. *Id.*

### B. Conditions of Confinement

Menard is severely overcrowded. (Doc. 1, p. 24). Cells that are designed for one person are used to hold two. *Id.* Because of this, "Plaintiff has no room to exercise, and now his back, knees hurt and he has a hernia and high blood pressure." *Id.* Black mold is on the walls, and Plaintiff is forced to breathe it in. *Id.* There is no ventilation system in the cell houses, "only a bunch of fans hanging on the wall that blow mold and dust spores all thru the air messing with [Plaintiff's] sinus." *Id.* The water smells like sewage, and the toilets break down. (Doc. 1, pp. 24-25). The power often goes out, and officers leave the prisoners in their cells when it is 90 degrees outside. (Doc. 1, p. 25). "With no fan in his cell, Plaintiff almost passed out from the extreme heat." *Id.* Menard has a rule that only allows inmates, including Plaintiff, a face towel, a "dry off" towel, underwear, a t-shirt, and socks once per year. *Id.*

Plaintiff is supposed to be let out of his cell for at least one hour each day for exercise. *Id.* This does not happen. *Id.* "Some days inmates are locked down 24 hours a day and even fed inside the cells because not enough officers showed up for work or just because they want to feed in. This limits Plaintiff from being able to exercise and causes his back, sides, and legs to hurt and causes his blood pressure to get higher." *Id.* Plaintiff is also limited on the amount of

soap that he is able to buy at commissary, and this limits how many times Plaintiff can wash. *Id.*

Butler, Baldwin, and Lashbrook "all have made rounds through Menard," have seen the issues "that could be seen," and "were notified of the other conditions by way of the countless grievances written by the Menard inmate population, the John Howard Association Monitor Reports 2013-2015, and the countless inmate filed lawsuits about these conditions that deprive Plaintiff of his constitutional rights by subjecting him to unnecessary suffering and pain." (Doc. 1, p. 26). Defendants have not fixed these issues, so they continue to harm Plaintiff. *Id.*

### C.  Access to the Courts

Mathis and Pierce "deliberately mishandled Plaintiff's medical grievance in an attempt to hinder Plaintiff from exhausting his administrative remedies." *Id.* If Plaintiff does not exhaust all of his available remedies, "this denies him access to the courts." (Doc. 1, p. 27). Butler, Lashbrook, and Baldwin all know that inmates, including Plaintiff, are being hindered from exhausting their available remedies "by grievances not being answered, throwed away, or not answered properly." *Id.* They have been made aware of this by inmates filing "countless" grievances and lawsuits about this issue. *Id.* The John Howard reports have also made them aware. *Id.* Still, nothing has been done to remedy these issues. *Id.*

As to Menard's law library, it is "run by a runner system that has inmate workers going to get and grab books and cases for inmates. Plaintiff does not read or speak English well so he doesn't know what cases or law to ask for." (Doc. 1, pp. 27-28). The paralegal, when asked by Plaintiff for help in filing a civil suit, told Plaintiff that it is not their responsibility to assist Plaintiff in researching the law. *Id.* "Plaintiff couldn't get any legal help or information at the law library because of the runner system that Menard is using and because the inmate clerks lack the education to assist Plaintiff in his legal research." (Doc. 1, p. 28-29). "Butler, Lashbrook, and

Baldwin all know about the runner system being in place at Menard and know that a class action lawsuit was filed about this same issue being used in all the maximum security prisons. This system was eliminated." (Doc. 1, p. 29). Due to all of these issues with the law library, Plaintiff has been denied access to the courts. *Id.*

Plaintiff requests monetary damages and injunctive relief.[1] (Doc. 1, p. 30).

<u>**Discussion**</u>

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into six counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

> **Count 1 –** Trost, Wexford, Shicker, Ritz, Garcia, Baldwin, Butler, and Lashbrook showed deliberate indifference to Plaintiff's serious medical need involving a hernia and pain associated therewith in violation of the Eighth Amendment.
>
> **Count 2 –** John Doe 1, Jane Doe 1, Wexford, Trost, Shicker, Butler, Baldwin, Garcia, Ritz, Einwohner, and Jane Doe 2 showed deliberate indifference to Plaintiff's serious medical needs involving his misdiagnosis as a diabetic and damage to his kidneys arising therefrom in violation of the Eighth Amendment.
>
> **Count 3 –** Baldwin, Butler, and Lashbrook subjected Plaintiff to unconstitutional conditions of confinement in violation of the Eighth Amendment.
>
> **Count 4 –** Mathis and Pierce deliberately mishandled Plaintiff's medical grievance in an attempt to prevent him from exhausting his administrative remedies, in violation of Plaintiff's First Amendment right to access the courts.
>
> **Count 5 –** Lashbrook, Baldwin, and Butler have failed to remedy the deliberate interference of prison staff with inmates exhausting their administrative

---

[1] The Complaint includes a request for injunctive relief. Notably, Plaintiff did not file a separate motion seeking a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, nor does he specifically mention a desire for a preliminary, rather than permanent, injunction. Should an urgent need arise, Plaintiff may request a preliminary injunction by filing a separate motion pursuant to Rule 65. Until he does so, his request will be construed as a request for permanent, not preliminary, injunctive relief.

remedies, in violation of Plaintiff's First Amendment right to access the courts.

**Count 6 –**    Lashbrook, Baldwin, and Butler have failed to remedy the inadequate runner system and unavailability of research assistance in the Menard law library, in violation of Plaintiff's First Amendment right to access the courts.

As discussed in more detail below, Counts 1, 2, and 3 will be allowed to proceed past threshold. Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard.

## Count 1 – Hernia

A prisoner raising a claim against a prison official for deliberate indifference to the prisoner's serious medical needs must satisfy two requirements. The first requirement compels the prisoner to satisfy an objective standard: "[T]he deprivation alleged must be, objectively, 'sufficiently serious[.]'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The second requirement involves a subjective standard: "[A] prison official must have a 'sufficiently culpable state of mind,'" one that amounts to "'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson*, 501 U.S. at 297). Liability under the deliberate-indifference standard requires more than negligence, gross negligence or even recklessness; rather, it is satisfied only by conduct that approaches intentional wrongdoing, *i.e.*, "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835.

Plaintiff has described a condition, a painful hernia, that meets the objective requirement of the deliberate indifference standard. As to the subjective standard, he claims that Trost, his medical care provider, refused to give him stronger pain medication and also pursued a prolonged course of treatment for his hernia that proved entirely ineffective. Plaintiff also claims

that Ritz and Garcia, collegial review doctors hired by Wexford, refused to approve his hernia surgery despite never having examined him themselves. These allegations are sufficient to state a claim against Trost, Ritz, and Garcia under Count 1, at least at this stage.

Plaintiff also names several defendants that are not medical providers, including Shicker, Baldwin, Butler, and Lashbrook. It is well established that "[f]or constitutional violations under § 1983 ... a government official is only liable for his or her own misconduct." *E.g.*, *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. June 5, 2015). "This means that to recover damages against a prison official acting in a supervisory role, a § 1983 plaintiff may not rely on a theory of *respondeat superior* and must instead allege that the defendant, through his or her own conduct, has violated the Constitution." *Perez v. Fenoglio,* 792 F.3d 768, 781 (7th Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). "An inmate's correspondence to a prison administrator may . . . establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation." *Perez*, 792 F.3d at 781-82 (citing *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) ("[A] prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition.")). "In other words, prisoner requests for relief that fall on 'deaf ears' may evidence deliberate indifference." *Perez*, 792 F.3d at 782.

Plaintiff alleges that Shicker was aware of the issue with Plaintiff's hernia and failed to intervene. Plaintiff has provided a letter that he sent to Shicker addressing the issue in support of this claim. (Doc. 1-1, p. 6). Plaintiff has provided similar support for his claims that Butler, Baldwin, and Lashbrook were aware that he was being denied medical treatment. (Doc. 1-1,

pp. 3-5, 8-10, 13-16, 20, 25-26). Such allegations are sufficient, if only just, to survive threshold review. Count 1 will therefore also proceed against Shicker, Butler, Baldwin, and Lashbrook.

As for Wexford, a corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action). Plaintiff has alleged that some of the defendants acted or failed to act as a result of an official policy espoused by Wexford, in that they refused to provide the appropriate medical care in the form of hernia surgery and stronger pain medication in favor of more cost effective, and potentially harmful, courses of treatment. Count 1 shall therefore also proceed against Wexford.

## Count 2 – Misdiagnosis and Kidney Damage

At this early stage, Plaintiff's alleged misdiagnosis as a diabetic and the kidney damage that allegedly resulted therefrom constitutes a serious medical condition under the objective deliberate indifference to medical needs factor. With respect to the subjective factor, Plaintiff has alleged sufficient fault and/or involvement of Wexford, Trost, Shicker, Butler, Baldwin, Garcia, Ritz, Einwohner, and Jane Doe 2, under similar reasoning to that outlined under Count 1.

Conversely, Plaintiff's claims against John Doe 1 and Jane Doe 1, the individuals that allegedly misdiagnosed him in 2004, will not proceed. Mere misdiagnosis of a medical condition is an error that does not rise to the level of deliberate indifference. *Williams v. Nickleson*, 84 F. App'x 656, 658 (7th Cir. 2003) (citing *Dunigan v. Winnebago County*, 165 F.3d 587, 592 (7th Cir. 1999)). Count 2 will therefore proceed against Wexford, Trost, Shicker, Butler, Baldwin, Garcia, Ritz, Einwohner, and Jane Doe 2, and it will be dismissed without prejudice as against

John Doe 1 and Jane Doe 1.

## Count 3 – Conditions of Confinement

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment and applies to the states through the Due Process Clause of the Fourteenth Amendment. *Gillis v. Litscher*, 468 F.3d 488, 491 (7th Cir. 2006) (citing *Robinson v. California*, 370 U.S. 600 (1962)). Although the Constitution "does not mandate comfortable prisons," it does require inmates to be housed under "humane conditions" and provided with "adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). A claim for unconstitutional conditions of confinement includes an objective and a subjective component. *Farmer*, 511 U.S. at 834. Plaintiff must demonstrate (1) that he suffered a sufficiently serious deprivation (*i.e.*, objective standard) and (2) the defendant acted with deliberate indifference to his conditions of confinement (*i.e.*, subjective standard). *Sain v. Wood*, 512 F.3d 886, 893-94 (7th Cir. 2008) (citing *Farmer*, 511 U.S. at 837).

The allegations satisfy the objective component of this claim for screening purposes. Plaintiff describes being housed with a cellmate in a cell designed for a single person. Movement in the cell is restricted because of its small size. Exercise opportunities outside of the cell are also limited. Plaintiff is exposed to mold and excessive heat, and he has issues accessing basic clothing and hygiene items. As a result of these conditions, Plaintiff has allegedly suffered from health problems.

The question is whether the high-ranking officials named in connection with this claim exhibited deliberate indifference to these conditions. Plaintiff submitted at least one grievance that discusses some of these issues, though it is unclear who may have received it. (Doc. 1-1,

p. 8-9). He does not allege that he spoke with any of them about the conditions of his confinement. He does allege, however, that Baldwin, Butler, and Lashbrook have seen the issues during rounds and have otherwise been notified of them because of the numerous grievances and lawsuits that have been filed over the years to challenge the same conditions (*i.e.*, Menard's small cells, frequent lockdowns, and lack of exercise opportunities). Plaintiff also claims that the John Howard Association Monitor Reports 2013-2015 have acted to notify the defendants of the conditions as well.

The Seventh Circuit has found that prison administrators in a similar situation were "well aware of multiple grievances from inmates regarding small cells" based on "numerous past lawsuits, including one specifically describing and ordering a remedial plan for overcrowding, small cells, and lack of adequate medical care. . . ." *Turley v. Rednour*, 729 F.3d 645, 652-53 (7th Cir. 2013) (citing *Lightfoot v. Walker*, 486 F. Supp. 504, 511 (C.D. Ill. 1980); *Munson v. Hulick*, 2010 WL 2698279 (S.D. Ill. July 7, 2010) (grievances filed by plaintiff and other inmates were deemed sufficient at screening to put prison officials on notice of unconstitutional conditions where Menard prisoner challenged 40' cells that held 2 inmates for 21-22 hours per day)). In addition to these past grievances and suits referred to by Plaintiff in his Complaint, Plaintiff did complain about the conditions in at least one grievance. Given these considerations, the Court finds that the Complaint satisfies the subjective component of this claim against Baldwin, Butler, and Lashbrook, three high-ranking administrative officials who were allegedly involved in decisions regarding inmate housing, lockdowns, and exercise opportunities at Menard.

Count 3 shall therefore receive further review against Baldwin, Butler, and Lashbrook.

## <u>Counts 4 and 5 – Mishandling of Grievances</u>

Generally, a prison official's mishandling of grievances states no claim where the official "otherwise did not cause or participate in the underlying conduct." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The mishandling of grievances by a prison official, more specifically, does not give rise to a First Amendment claim for the denial of access to the courts. The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all available administrative remedies before filing a suit in federal court. 42 U.S.C. § 1997e(a). Administrative remedies are considered to be unavailable under the PLRA, however, when prison officials fail to respond to a prisoner's grievances. *See Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (citations omitted). In addition, "exhaustion is not required when the prison officials responsible for providing grievance forms refuse to give a prisoner the forms necessary to file an administrative grievance." *Hill v. Snyder*, 817 F.3d 1037, 1041 (7th Cir. 2016). A plaintiff who can demonstrate the unavailability of administrative remedies is relieved from the obligation to exhaust administrative remedies and can proceed with his or her suit. *Lewis*, 300 F.3d at 833.

The Complaint fails to state a First Amendment access to the courts claim against Mathis or Pierce for mishandling Plaintiff's grievances. His access to the courts could not have been impeded by the alleged actions, as the unavailability of administrative remedies, as explained above, is no bar to potential litigants bringing their claims. Plaintiff also has no claim against Lashbrook, Baldwin, and Butler for their failure to remedy these grievance issues, since these issues do not constitute constitutional deprivations. Counts 4 and 5 shall therefore be dismissed with prejudice as frivolous.

## Count 6 – Law Library

The Seventh Circuit uses a two-part test when determining whether the conduct of a prison official violates an inmate's right of access to the courts. *Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004). First, the inmate must show that prison officials failed "to assist in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Jenkins v. Lane,* 977 F.2d 266, 268 (7th Cir. 1992) (quoting *Bounds v. Smith*, 430 U.S. 817, 828 (1977)). Second, the inmate must be able to show "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation." *Alston v. DeBruyn*, 13 F.3d 1036, 1041 (7th Cir. 1994); *see also Lehn*, 364 F. 3d at 868. A plaintiff must explain "the connection between the alleged denial of access . . . and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions." *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (internal quotation and citation omitted); *accord Guajardo Palma v. Martinson*, 622 F.3d 801, 805-06 (7th Cir. 2010). This requires Plaintiff to identify the underlying claim that was lost. *See Christopher v. Harbury*, 536 U.S. 403, 416 (2002); *Steidl v. Fermon*, 494 F.3d 623, 633 (7th Cir. 2007).

Plaintiff's allegations only address the first part of the two-part access to courts test, in that he claims he did not receive adequate legal assistance at Menard. Whether his allegations under the first part are adequate is irrelevant, however, as he has entirely failed to allege any detriment to pending or contemplated litigation. He does not claim he was unable to file this suit or any other, or that the lack of assistance caused him to miss deadlines or otherwise lose any claims. Accordingly, Count 6 shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

## Illinois Department of Corrections

No matter what relief Plaintiff seeks against IDOC, his claims against it are barred because IDOC, as a state agency, is not a "person" that may be sued under § 1983. *Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012) ("[A] state and its agencies are not suable 'persons' within the meaning of section 1983 ...." (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989))); see 42 U.S .C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...."). While immunity under the Eleventh Amendment does not bar suits for declaratory and injunctive relief against state employees sued in their official capacities, *see Kroll v. Bd. of Trs. of Univ. of Ill.*, 934 F.2d 904, 907–08 (7th Cir. 1991), this does not save Plaintiff's claim against IDOC, a state agency, even though he seeks injunctive relief. Separate from IDOC's immunity under the Eleventh Amendment, it also does not constitute a "person" that may be sued under § 1983. *See Thomas*, 697 F.3d at 613 (distinguishing a state agency's statutory defense that it is not a "person" under § 1983 from a state agency's constitutional defense of Eleventh Amendment sovereign immunity, and admonishing that courts should decide matters on statutory grounds before reaching constitutional grounds). IDOC will therefore be dismissed from this action with prejudice.

## Identification of Unknown Defendants

Plaintiff shall be allowed to proceed with Count 2 against Jane Doe 2, but this defendant must be identified with particularity before service of the Complaint can be made on her. Where

a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, the Warden of Menard, Defendant Lashbrook, is already a party to this action. She shall be responsible for responding to discovery (formal or otherwise) aimed at identifying this unknown defendant. Guidelines for discovery will be set by the United States Magistrate Judge. Once the name of Jane Doe 2 is discovered, Plaintiff shall file a motion to substitute the newly identified defendant in place of the generic designation in the case caption and throughout the Complaint.

## Pending Motions

Plaintiff's Motion to Appoint Counsel (Doc. 3) is **REFERRED** to United States Magistrate Judge Donald G. Wilkerson.

## Disposition

**IT IS HEREBY ORDERED** that **COUNT 1** shall **PROCEED** against **TROST**, **WEXFORD**, **SHICKER**, **RITZ**, **GARCIA**, **BALDWIN**, **BUTLER**, and **LASHBROOK**.

**IT IS FURTHER ORDERED** that **COUNT 2** shall **PROCEED** against **TROST**, **WEXFORD**, **SHICKER**, **RITZ**, **GARCIA**, **BALDWIN**, **BUTLER**, **EINWOHNER,** and **JANE DOE 2**. **COUNT 2** is **DISMISSED** without prejudice as against **JOHN DOE 1** and **JANE DOE 1** for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **COUNT 3** shall **PROCEED** against **BALDWIN**, **BUTLER**, and **LASHBROOK**

**IT IS FURTHER ORDERED** that **COUNTS 4** and **5** are **DISMISSED** with prejudice

as legally frivolous.

**IT IS FURTHER ORDERED** that **COUNT 6** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **ILLINOIS DEPARTMENT OF CORRECTIONS is DISMISSED** with prejudice from this action for the reasons articulated above, and **JOHN DOE 1, JANE DOE 1**, **MATHIS**, and **PIERCE** shall be **DISMISSED** from this action without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that as to **COUNTS 1**, **2**, and **3,** the Clerk of Court shall prepare for **TROST**, **WEXFORD**, **SHICKER**, **RITZ**, **GARCIA**, **BALDWIN**, **BUTLER**, **LASHBROOK**, **EINWOHNER,** and **JANE DOE 2** (once identified): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendants' place of employment as identified by Plaintiff. If one of the defendants fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on **JANE DOE 2** until such time as Plaintiff has identified her by name in a properly filed motion for substitution of parties. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the names and service addresses for this individual.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: August 14, 2017**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**